Argued October 12, modified December 13, 1961, petition for
rehearing denied January 24, 1962

## ELFSTROM ET AL *v.* BROWN ET AL

366 P. 2d 728
368 P. 2d 333

*Douglas L. Hay,* Salem, argued the cause for appellants. With him on the brief was John A. Heltzel, Salem.

*Roy Harland,* Salem, argued the cause for respondents. With him on the brief was Asa L. Lewelling, Salem.

Before WARNER, Presiding Justice, and SLOAN, O'CONNELL, GOODWIN and BRAND, Justices.

O'CONNELL, J.

This is a suit brought by plaintiffs, lessees, for the declaration of their rights under a percentage lease executed by defendants as lessors. Defendants filed a cross complaint seeking a forfeiture of the lease. The lease has since expired by its own terms. Defendants appeal.

The case was submitted to the court without a jury, upon the pleadings and upon a stipulation to submit the cause for decision upon an agreed case.

The question to be resolved is the applicability of certain terms of lease relating to the percentage rental on gross sales connected with plaintiffs' business. The paragraph of the lease requiring construction reads as follows:

"In addition to the minimum base rent provided for above [$600.00 per month], the Lessee agrees to pay one per cent (1%) annually on all gross sales in excess of $620,000.00 per year, which may be made from year to year upon and through the leased premises, which shall be paid on or before the next succeeding 1st day of February for each

year of the term hereof. In determining the amount of gross sales for the purpose of computing the rent hereunder, the Lessee agrees to report to the Lessors and include in the amount of said sales the gross business from all of the various departments, concessions, and activities of the Lessee's business, both wholesale and retail, as well as contract and agency business and sales. The gross shall also include all sales and transactions handled directly to final destinations, either on factory or outside warehouse delivery to jobs, or contracts where material is used. The Lessors have conceded the 1% rental percentage as above provided, based on all the business normally and fairly flowing to the Lessee's business in the Salem trading area, but said gross sales are not intended to cover or be affected by any branch business which may be established by the Lessee in the future in other trading areas in Oregon, or other states, for example such as a branch in the Klamath Falls area, but the Lessee agrees that it will not discriminate against the Lessors' interest in said gross sales for the Salem trading area in favor of any branch which the Lessee may establish."

The lease, executed on April 14, 1944, demised premises at 340 Court Street, in the heart of the Salem business district, for a term of seven years and was later extended an additional six years, to December 31, 1957. As the quoted portion of the lease indicates, the basis for the percentage rental was to include "the Lessee's business in the Salem trading area." At the time the original lease was executed, plaintiffs were engaged in the painting and roofing business. After the lease was entered into the leasehold became the business residence for the painting and roofing business. Later these business activities were moved by plaintiffs from the leasehold premises to another business site. They continued to include in

the rental a percentage of the gross receipts from these business activities.

On May 11, 1951 the lease was modified to provide "that on Government jobs, done by R. L. Elfstrom Company outside of Marion County, and amounting to over $25,000, where the present lease calls for a rental of one per cent on gross sales that this shall be changed to one half of one per cent, but that the one per cent shall remain in effect on all other business."

On May 1, 1952 the lessors consented to a sublease of the premises to Roberts Brothers. Thereafter plaintiffs established their principal business headquarters in a warehouse building on South Liberty Street at the corner of Trade Street. Plaintiffs continued to pay as rental a percentage of the gross receipts from the business conducted through the new business location.

The dispute which generated this lawsuit relates to the gross receipts derived from two business establishments which were carried on respectively under the names Capital City Glass Company and Used Merchandise Mart and with which plaintiffs had a business connection which will be described later. Defendants contend that the gross receipts from these two business activities are to be included in computing the percentage rental.

The business connection between the glass company and plaintiffs arose out of an agreement entered into March 16, 1946 between plaintiffs (parties of the first part) and one Don A. Brown (party of the second part). That agreement provided, in part, as follows:

"* * * the parties of the first part do hereby grant unto party of the second part and party of the second part does hereby accept a franchise for the purpose of operating a glass department in

connection with the business now being operated by parties of the first part in Salem, Oregon.

"It is understood and agreed that parties of the first part shall furnish suitable space on the premises of parties of the first part for the carrying on of said glass department business by party of the second part; the amount and location of such space to be agreed upon between the parties hereto. In addition thereto the parties of the first part agree to furnish such office assistance as may be necessary for the keeping of the accounts of party of the second part.

"It is further understood and agreed that parties of the first part shall furnish the electricity, water and telephone services necessary for the department of party of the second part.

"It is understood and agreed that all sales both charge and cash shall be run through the books and accounts of parties of the first part and that a settlement shall be made between the parties hereto on the 10th day of each and every month following the execution of this agreement, and at the time of such settlement the parties of the first part shall be entitled to retain fifteen (15%) per cent [later changed to 10%] of all sales both cash and charge for their part thereof, and the balance thereof shall be paid to party of the second part.

"* * * * *

"It is understood and agreed that the party of the first part reserves the right to handle the sale of glass items that properly belong in a retail store and including the sale of carara or decorative store front glass.

"It is understood and agreed that party of the second part shall furnish all of his own labor, equipment and materials."

Plaintiffs and the Used Merchandise Mart entered into a similar agreement about six years later. Signs advertising the glass company and the used merchan-

dise concern appeared beneath a larger sign advertising "R. L. Elfstrom Co." on the face of the building in which all three businesses were conducted.

During the years 1946 to 1952 inclusive plaintiffs paid to defendants percentage rentals based upon gross sales which included the gross sales of the Capital City Glass Company. The gross sales of the Used Merchandise Mart were included for the year 1952.

Defendants state that the gross sales of these two businesses were included in plaintiffs' reports to the defendants. This is admitted by plaintiffs but they contend that they were not aware of the inclusion of such gross sales until March 1, 1954. Their explanation is that the reports were prepared by an accountant and that plaintiffs did not know that the accountant had included the glass company and the used merchandise mart sales in the reported figure.

The gross sales of the two affiliated companies were also included in plaintiffs' partnership income tax returns and, apparently, plaintiffs paid an income tax based upon the gross sales for all three companies.

Plaintiffs made no effort to recover the alleged overpayment of rent. The present suit was not filed until approximately seven months after plaintiffs discovered their accountant's error. Plaintiffs do not seek to recover the alleged overpayment in this suit.

One other evidentiary matter should be noted. When the defendants purchased glass from the glass company the invoice for the sale was rendered on a printed form bearing the business name of the plaintiffs.

The trial court held that the percentage rental base should include 10% of the sales of the two affiliated businesses, the percentage which measured plain-

tiffs' right to compensation under the franchise agreements with the two companies.

We are unable to agree with the trial court. It is our opinion that the lease requires the payment of a percentage rental computed upon a figure including the gross sales of the Capital City Glass Company and the Used Merchandise Mart. Our interpretation of the lease is based upon the following considerations.

■ The lease calls for the payment of a percentage of the lessee's gross sales "which may be made from year to year upon *and through* the lease premises." [Emphasis added.] The lease further provides that the gross sales are to include "the gross business from all of the various departments, concessions, and activities of the Lessee's business, both wholesale and retail, as well as contract and agency business and sales." The latter language is broad enough to include not only lessee's business activities conducted upon the leasehold premises, but also outside the leasehold premises. The parties so construed the language with respect to lessee's construction contracting business. That business was carried on entirely outside of the leasehold premises and the gross sales derived from it were included in computing the rental. After the premises were sublet to Roberts Brothers, none of plaintiffs' activities were conducted "through the leased premises."

The only question is, then, whether the business activities of the Capital City Glass Company and the Used Merchandise Mart, which were also conducted off the leasehold premises, were activities of the lessee within the meaning of the lease. The agreement entered into between plaintiffs and Don A Brown on March 16, 1946, under which the latter was to conduct

the glazing business, provided that Brown "does hereby accept a *franchise* for the purpose of operating a glass *department* in connection with the business now being operated by parties of the first part in Salem, Oregon." [Emphasis added.] Thus, by their own definition, the plaintiffs denominated the glass business as a department of their business activity. The lease clearly requires the inclusion of gross sales of "departments" and "concessions" of the lessee's business.

It is argued, however, that the words "departments" and "concessions" as used in the lease had reference only to activities actually conducted upon or through the leasehold premises. Lessees concede that the gross sales from certain activities wholly divorced from the leasehold premises were properly included in computing the rental. Having made that concession, it is difficult to see the basis for their contention that such outside activities were not to include those carried on through "departments" or "concessions." Certainly the lease does not contain any language so limiting the terms "departments" and "concessions."

What is probably more significant is the fact that plaintiffs themselves demonstrated that they regarded the glass and the furniture businesses as their own in at least two important particulars. It is stated in defendants' stipulation that "[l]essees' partnership income tax returns during the lease period report the same identical gross sales as those reported by lessees to lessors and upon which lessees paid the additional percentage rental to lessors during the lease period." The income tax returns were not introduced into evidence and consequently we do not have the amount of gross sales reported for each of the years in dispute (and these amounts do not appear from any other

evidence), but we do know that the combined gross sales of the glass company and of the merchandise mart for the years 1953-1957 inclusive were substantial.[1]

Assuming, then, that plaintiffs' partnership returns during the period in question included a gross sales figure for the glass company's business comparable to the 1953 total of $174,205.21, it is likely that the additional tax payable by plaintiffs would be substantial. Further, plaintiffs included the gross sales from the glass business in computing and paying the rent for the years 1946, 1947, 1948, 1949, 1950, 1951, 1952. Plaintiffs' stipulation states that until 1954 they were unaware of the fact that the computation included the gross sales of the other business. Again, we have no direct evidence as to the amount of sales attributable to the glass company and to the merchandise mart prior to 1953. But if we accept the lowest of the available figures, the rental attributable to such sales would be $1,742. For the year 1951 the plaintiffs paid $5,824.31 and for 1952 they paid $7,993.98. It seems likely that a substantial proportion of these latter totals consisted of the rental attributable to the glass and used furniture businesses.

It is difficult to believe that a substantial proportion of plaintiffs' rent and a substantial addition to their income tax would be paid unless the plaintiffs regarded the sales upon which such payments were made as a part of the sales of their partnership busi-

---

[1]

| | "Glass Co. Gross Sales | Used Merchandise Mart Gross Sales |
|---|---|---|
| "1953 | 174,205.21 | 28,853.42 |
| 1954 | 200,646.17 | 33,374.47 |
| 1955 | 228,139.79 | 37,637.67 |
| 1956 | 231,998.51 | 42,628.88 |
| 1957 | 188,164.77 | 48,325.07" |

ness. The inference that they had knowledge of this fact is as strong as their denial that they had such knowledge. Without such knowledge the principle of practical construction by a party to an instrument would not be applicable. 3 Corbin, Contracts § 558 (1951). However, our interpretation of the lease in question does not need to rest upon this aspect of the parties' own construction. The evidence is sufficient to establish that the affiliated companies were "departments" or "concessions" of the plaintiff company within the meaning of those terms as used in the lease.

■ Defendants' cross complaint prays for a forfeiture of the lease. Under the circumstances of this case a forfeiture of the lease would not be equitable. Defendants' prayer for forfeiture is therefore denied.

The decree of the lower court is modified to provide that defendants shall recover the unpaid percentage rental on the gross sales of the Capital City Glass Company and the Used Merchandise Mart, together with interest at six per cent.

GOODWIN, J., specially concurring.

I concur in the result of the majority opinion. The lease is sufficiently ambiguous to justify the court in construing it. Certainly the landlords desired to apply the percentage rent to as much of the tenants' business as possible. Certainly the tenants agreed to subject all their own gross sales and those of their departments and concessions to the percentage rent. Therefore, I concur in the court's construction of the lease that the disputed sales were by a "concession". I do not agree, however, with the effect the majority gives the fact that for several years the tenants included the disputed gross sales in the computation of their rent. First, the accountant who calculated the

gross sales and rental payments was the accountant for both parties. Second, the tenants have stated that these payments were made without their knowledge. (Both parties stipulated that if witnesses were called, the parties would testify and put on other evidence in accordance with an agreed statement of facts.) Since there is no evidence to contradict this assertion by the tenants we should not imply any falsehood on their part.

BRAND, J., concurs in this opinion.

## ON REHEARING

Asa L. Lewelling and Roy Harland, Salem, for the petitioners.

Douglas L. Hay and John A. Heltzel, Salem, contra.

Before WARNER, Presiding Justice, and ROSSMAN, PERRY, SLOAN, O'CONNELL, GOODWIN and BRAND, Justices.

O'CONNELL, J.

■ Plaintiffs have filed a petition for rehearing alleging that our original opinion was erroneous in several particulars. All but two of the alleged errors are simply assertions that we misinterpreted the lease. However, two assertions made in plaintiffs' petition require comment.

In the original opinion, after setting out excerpts from a contract entered into between plaintiffs and Don A. Brown, we stated that "[p]laintiffs and the Used Merchandise Mart entered into a similar agreement about six years later." Plaintiffs now contend that this statement is factually erroneous because, it is asserted, "[a]t no time did plaintiffs and Used Merchandise Mart enter into any such agreement, none is referred to in the Narrative Statement, nor is there any other evidence of such agreement." We call attention to the following portion of the narrative statement prepared by plaintiffs themselves:

"* * * That said tax accountant included as gross sales all the business of Capital City Glass Company and used Merchandise Mart for the reason that under the *contracts* with each of these

concerns, the accounts were purchased at 90% of their face value and the books of plaintiffs showed it as a concession account with 90% of the total sales as the cost. Therefore, the amount of profit to plaintiffs for their services performed would be 10% from which plaintiffs were required to furnish all the services such as the place to do business, lights, heat, telephone, stationery, loss on accounts receivable and other expenses of that kind and nature." Narrative Statement, p. 16 (Emphasis added)

It will be observed that plaintiffs not only refer to "the contracts with each of these concerns," but describe the essence of the contract between plaintiffs and Don A. Brown which we set out in the original opinion. We are still of the opinion that the evidence (limited as it was to narrative statements by each of the parties) amply supports our original statement.

Our attention is called to the following statement made in the original opinion: "The gross sales of the two affiliated companies were also included in plaintiffs' partnership income tax returns, and apparently plaintiffs paid an income tax based upon the gross sales for all three companies." In the present petition plaintiffs call our attention to that part of their narrative statement which we have set out above, explaining the accounting method involved in showing plaintiffs' interest in the gross sales of Capital City Glass Company and the Used Merchandise Mart. It would appear from plaintiffs' explanation that the partnership information return showed the total gross sales of all three companies with a deduction of 90% of the gross sales of the affiliated companies to arrive at the 10% profit to which plaintiffs would be entitled "under the contracts with each of these concerns." Whether the gross sales of the three com-

panies appeared as one total or as separate totals for each, it is clear that the sales of the affiliated companies were in some sense regarded as a part of the total business carried on by plaintiffs. Assuming this to be so, our statement that plaintiffs' income taxes were based upon the gross sales of the three companies would be accurate only in the sense that the partnership information return included all sales as the beginning point for the computation of the net income received by the partnership. To make our opinion consistent with plaintiffs' contention in this respect we modify it insofar as it states that the tax was computed upon the gross sales of the affiliated companies. However, even though the tax was paid only upon the 10% profit (less expenses) we still think that the recognition by plaintiffs in their tax return of the arrangement with the affiliated companies as "concession" accounts (their own description of the transaction) brings the arrangement under the terms of the lease which requires the lessees to "include in the amount of said sales the gross business from all of the various departments, *concessions,* and activities of Lessee's business." (Emphasis added).

The petition for rehearing is denied.

McALLISTER, C. J., did not participate in the consideration or decision of this case.

ROSSMAN, J. and PERRY, J., dissent.